IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

AMANDA ALEXANDER and
JOSEPH REMALIA,

    Plaintiffs,

v.

                                                    Case No. 2:24-cv-00618-MIS-GBW

RICHARD LOPEZ, CARLOS
VALENZUELA, and LARRY REUTER,

    Defendants.

**ORDER GRANTING DEFENDANT LARRY REUTER'S MOTION FOR SUMMARY JUDGMENT**

THIS MATTER is before the Court on Defendant Larry Reuter's Motion for Summary Judgment, ECF No. 24 ("Motion"), filed January 27, 2025. Plaintiffs Amanda Alexander and Joseph Remalia filed a Response on March 24, 2025, ECF No. 29 ("Response"), to which Agent Reuter filed a Reply on March 27, 2025, ECF No. 31 ("Reply"). Upon review of the Parties' submissions, the record, and the relevant law, the Court will GRANT the Motion.

**I.    Background[1]**

On the evening of June 17, 2021, Plaintiffs and several of their friends were at an isolated property that Plaintiffs own in Veguita, New Mexico, shooting firearms at an abandoned and vacant mobile home. Compl. ¶¶ 14-15, ECF No. 1. Around 9:00 pm that evening, two officers with the Socorro County Sheriff's Office—Defendants Richard Lopez and Carlos Valenzuela—arrived at the property in an unmarked vehicle. Id. ¶¶ 4-5, 16. Upon arrival, the officers parked approximately sixty to seventy-five yards from where Plaintiffs and their friends were

---

[1] Unless otherwise noted, the information contained in this section is gleaned from the Complaint and is included solely to frame the issues raised by Agent Reuter's Motion.

congregating around a pickup truck. Id. ¶ 18. Shortly thereafter, shots were fired, see id. ¶ 20, although the Parties dispute who fired first, see id. ¶¶ 23-24; Cnty. Def.'s Mot. for Summ. J., Undisputed Material Facts ¶ 6, ECF No. 27. In the crossfire, a bullet struck an oxygen tank in the pickup truck, causing the oxygen tank to explode, and "engulfing Plaintiffs and their friends in a ball of fire." Compl. ¶ 21.

At some point after the shootout—although the Complaint does not specify when—Agent Reuter, a law enforcement officer with the New Mexico State Police, id. ¶ 6, arrested Mr. Remalia without a warrant for being a felon in possession of a firearm, see id. ¶ 27.

On June 17, 2024, Plaintiffs instituted this lawsuit, filing a Section 1983 Complaint for the Violation of Constitutionally Protected Rights against Officer Lopez, Officer Valenzuela, and Agent Reuter. See id. at 1. Relevant here, Count III alleges a Fourth Amendment claim for false arrest and false imprisonment against Agent Reuter.[2] Id. ¶¶ 48-54. Specifically, it alleges that Agent Reuter arrested and detained Mr. Remalia without probable cause to believe that Mr. Remalia was a felon in possession of a firearm. Id. ¶ 52.

On January 27, 2025, Agent Reuter filed the instant Motion for Summary Judgment, arguing that he is entitled to qualified immunity. ECF No. 24. Plaintiffs filed a Response, ECF No. 29, to which Agent Reuter filed a Reply, ECF No. 31.

## II. Legal Standards

### a. Rule 56

Rule 56 of the Federal Rules of Civil Procedure allows a court to grant summary judgment when the evidence submitted by the parties establishes that no genuine issue of material fact exists

---

[2] Counts I and II allege that Officers Lopez and Valenzuela violated Plaintiffs' rights under the Fourth and Fourteenth Amendments, respectively. See ECF No. 1 ¶¶ 33-47.

and the moving party is entitled to judgment as a matter of law. "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the movant meets this burden, the nonmovant is required to point the court to record evidence of facts showing that there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-52 (1986). A fact is "material" if under the substantive law it is essential to the proper disposition of the claim. Id. at 248. "An issue is 'genuine' if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 670 (10th Cir. 1998).

The nonmoving party cannot rely upon conclusory allegations or contentions of counsel to defeat summary judgment. See Pueblo Neighborhood Health Ctrs., Inc. v. Losavio, 847 F.2d 642, 649 (10th Cir. 1988). Rather, the nonmovant must "go beyond the pleadings and designate specific facts so as to make a showing sufficient to establish the existence of an element essential to [their] case in order to survive summary judgment." Johnson v. Mullin, 422 F.3d 1184, 1187 (10th Cir. 2005) (quoting McKnight v. Kimberly Clark Corp., 149 F.3d 1125, 1128 (10th Cir. 1998)).

It is not the court's role to weigh the evidence or assess the credibility of witnesses in ruling on a motion for summary judgment. See Daniels v. United Parcel Serv., Inc., 701 F.3d 620, 627 (10th Cir. 2012), abrogated on other grounds by Muldrow v. City of St. Louis, 601 U.S. 346, 355 (2024). Rather, the court resolves all doubts against the movant, construes all admissible evidence in the light most favorable to the nonmovant, and draws all reasonable inferences in favor of the nonmovant. See Hunt v. Cromartie, 526 U.S. 541, 551-52 (1999); see also Garrison v. Gambro, Inc., 428 F.3d 933, 935 (10th Cir. 2005). However, summary judgment may nevertheless be

3

granted where "the evidence is merely colorable, or is not significantly probative." Liberty Lobby, 477 U.S. at 249-50 (internal citations omitted).

### b. Qualified immunity

The doctrine of qualified immunity protects government officials sued in their individual capacity from liability for monetary damages unless their actions violate a "clearly established" statutory or constitutional right. City of Escondido v. Emmons, 586 U.S. 38, 42 (2019) (quoting Kisela v. Hughes, 584 U.S. 100, 104 (2018)). A right is clearly established only when, at the time of the challenged conduct, "the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he [or she] was violating it." Plumhoff v. Rickard, 572 U.S. 765, 778–79 (2014).

"A plaintiff can demonstrate that a constitutional right is clearly established 'by reference to cases from the Supreme Court, the Tenth Circuit, or the weight of authority from other circuits.'" Gann v. Cline, 519 F.3d 1090, 1092 (10th Cir. 2008) (quoting Anderson v. Blake, 469 F.3d 910, 914 (10th Cir. 2006)). "The rule must be settled law, which means it is dictated by controlling authority or a robust consensus of cases of persuasive authority." District of Columbia v. Wesby, 583 U.S. 48, 63 (2018) (internal citations and quotation marks omitted). Although the plaintiff is not required to identify a case "perfectly on-point[,]" Quinn v. Young, 780 F.3d 998, 1005 (10th Cir. 2015), "existing precedent must have placed the statutory or constitutional question beyond debate." Kisela, 584 U.S. at 104 (quoting White v. Pauly, 580 U.S. 73, 79 (2017)). Clearly established law cannot be defined "at a high level of generality"; rather, it must be particularized to the facts of the case. Ashcroft v. al-Kidd, 563 U.S. 731, 742 (2011); see also Anderson v. Creighton, 483 U.S. 635, 640 (1987). But "officials can still be on notice that their conduct violates established law even in novel factual circumstances." Quinn, 780 F.3d at 1005 (quoting Cortez

v. McCauley, 478 F.3d 1108, 1115 (10th Cir. 2007)).  The dispositive question is whether the unlawfulness of the official's actions was apparent in light of pre-existing law.  See Creighton, 483 U.S. at 640.

When a defendant asserts qualified immunity at the summary judgment stage, "the burden shifts to the plaintiff to show that: (1) the defendant violated a constitutional right, and (2) the constitutional right was clearly established."  Kapinski v. City of Albuquerque, 964 F.3d 900, 905 (10th Cir. 2020) (quoting Koch v. City of Del City, 660 F.3d 1228, 1238 (10th Cir. 2011)).  The court may address these two inquiries in any order.  Pearson v. Callahan, 555 U.S. 223, 236 (2009); McCowan v. Morales, 945 F.3d 1276, 1282 (10th Cir. 2019).  If the plaintiff fails to satisfy either part of the test, the court must grant qualified immunity.  McCowan, 945 F.3d at 1282 (quoting Est. of Ceballos v. Husk, 919 F.3d 1204, 1212-13 (10th Cir. 2019)).  If the plaintiff succeeds, then—and only then—does the defendant bear the traditional burden of the movant for summary judgment.  Kapinski, 964 F.3d at 905 (quoting Koch, 660 F.3d at 1238).

## III.     Undisputed Material Facts[3]

The shootout in this case occurred on June 17, 2021.  Def.'s Facts ¶ 1.  In the early morning hours of June 18, 2021, New Mexico State Police agents interviewed Ms. Alexander twice and Mr.

---

[3] The following facts are gleaned from Agent Reuter's Statement of Undisputed Material Facts, which is incorporated into his Motion. ECF No. 24 at 4-8 ("Def.'s Facts"). Pursuant to Local Rule 56.1, a response to a motion for summary judgment

> must contain a concise statement of the material facts cited by the movant as to which the non-movant contends a genuine issue does exist. Each fact in dispute must be **numbered**, must refer with particularity to those portions of the record upon which the non-movant relies, and must state the **number** of the movant's fact that is disputed. All material facts set forth in the Memorandum will be deemed undisputed unless specifically controverted.

D.N.M.LR-Civ. 56.1(b).  Here, Plaintiffs' Response does not contain concise statement of the material facts cited by Agent Reuter as to which Plaintiffs contend a genuine issue exists.  Nor do Plaintiffs otherwise specifically dispute or controvert any of the facts recited by Agent Reuter.  Accordingly, by operation of Local Rule 56.1, Agent Reuter's facts are deemed undisputed.  See id.  See also Fed. R. Civ. P. 56(c)(1).

Remalia once. Id. ¶¶ 4, 7, 12. During the second interview with Ms. Alexander, she admitted that she knew Mr. Remalia could not legally possess a firearm, id. ¶ 8, that Mr. Remalia was a felon, id. ¶ 10, and that Mr. Remalia held her gun, id. ¶ 11.

During the interview with Mr. Remalia, he admitted that he handled Ms. Alexander's firearm, id. ¶¶ 14, 17-18, that he shot Ms. Alexander's firearm twice, id. ¶ 15, that he handled a gun belonging to a man named "Boxer," id. ¶ 19, that he handled a .22 caliber gun, id. ¶ 20, and that he was a felon, id. ¶ 16.

In a search incident to arrest, officers found two live rounds of .22 caliber ammunition in Mr. Remalia's wallet, which was in his possession. Id. ¶¶ 22-23.

Based upon the interview with Mr. Remalia, Agent Reuter drafted a criminal complaint and charged Mr. Remalia with possession of a firearm or destructive device by a felon, in violation of N.M. Stat. Ann. § 30-7-16. Id. ¶¶ 23-24.

## IV. Discussion

Agent Reuter argues that he is entitled to qualified immunity as to Count III. Specifically, he argues that: (1) no Fourth Amendment violation occurred because he had probable cause to charge Mr. Remalia with being a felon in possession of a firearm or destructive device based on the interviews with Ms. Alexander and Mr. Remalia, and based on the fact that officers found two rounds of ammunition in his wallet, Mot. at 9-12, 13-14, ECF No. 24; and (2) any right allegedly violated was not clearly established at the time of the conduct, id. at 12-13.

Plaintiffs argue that Agent Reuter lacked probable cause to arrest Mr. Remalia at the scene of the shootout, and the information Agent Reuter learned later during Mr. Remalia's interview is irrelevant to whether he "had probable cause to arrest Mr. Remalia on scene in the first instance." Resp. at 1-4, ECF No. 29. Mr. Remalia further argues that he "had a clearly established right to

6

be free from a warrantless arrest without probable cause." Id. at 2, 5 (citing Olsen v. Layton Hills Mall, 312 F.3d 1304, 1312-13 (10th Cir. 2002).

In his Reply, Agent Reuter argues that he did not participate in Mr. Remalia's arrest at the scene of the shootout. Reply at 1-6 ECF No. 31 (citing Jenkins v. Wood, 81 F.3d 988, 994 (10th Cir. 1996); Vasquez v. Davis, 882 F.3d 1270, 1275 (10th Cir. 2018)). Rather, Officer Briar Billa arrested Mr. Remalia at the scene of the shootout, as evidenced by the Supplemental Police Report of New Mexico State Police Agent Russell Martinez, which Mr. Remalia attached to his Response. Id. at 1-2, 5 (citing Supp. Report of Agent Russell Martinez at 3, ECF No. 29-1 (hereinafter, "Martinez Report")). In fact, Agent Reuter was not even present at the time Officer Billa arrested Mr. Remalia at the scene of the shootout. Id. at 2.

The Court finds that Agent Reuter is entitled to qualified immunity because the undisputed facts and record evidence establish that Agent Reuter did not violate Mr. Remalia's rights.

"To maintain a . . . false arrest[] or false imprisonment claim under § 1983, plaintiffs must demonstrate the elements of a common law claim and show that their Fourth Amendment right to be free from unreasonable search and seizure has been violated." Trimble v. Park Cnty. Bd. of Comm'rs, 242 F.3d 390, 2000 WL 1773239, at *3 (10th Cir. 2000) (unpublished table decision) (citing Taylor v. Meacham, 82 F.3d 1556, 1561 (10th Cir. 1996)). The presence of probable cause to arrest defeats a claim under Section 1983 for false arrest or false imprisonment. See Kaufman v. Higgs, 697 F.3d 1297, 1300 (10th Cir. 2012) ("In the context of a false arrest claim, an arrestee's constitutional rights were violated if the arresting officer acted in the absence of probable cause that the person had committed a crime."); Fuerschbach v. Sw. Airlines Co., 439 F.3d 1197, 1207-08 (10th Cir. 2006) ("A defendant possessed of a good faith and reasonable belief in the lawfulness of the action is not liable for false imprisonment or false arrest. . . . [A] good faith belief in the

7

lawfulness of the action ordinarily requires probable cause to arrest."); Romero v. Fay, 45 F.3d 1472, 1480 (10th Cir. 1995) ("A police officer may arrest a person without a warrant if he has probable cause to believe that person committed a crime.").

Here, Plaintiffs' entire argument is based on the false premise that Agent Reuter arrested Mr. Remalia at the scene of the shootout. See Resp. at 1-6, ECF No. 29. The record establishes that Officer Briar Billa—not Agent Reuter—arrested Mr. Remalia at the scene of the shootout. See Martinez Report at 3, ECF No. 29-1 ("Officer Billa secured the male later identified as Joseph Remalia and placed him in Officer Winders patrol unit."). Agent Reuter asserts that he "was not present for Remalia's arrest[,]" Reply at 2, ECF No. 31, and Plaintiffs have provided no argument or evidence to the contrary.[4]

Plaintiffs do not argue that Agent Reuter lacked probable cause to arrest Mr. Remalia after he interviewed Mr. Remalia at the New Mexico State Police Office in Los Lunas; in fact, Plaintiffs appear to concede that Agent Reuter had probable cause to arrest him after the interview. See Resp. at 2 ¶ 3, ECF No. 29 ("Defendant Reuter's material facts only tend to establish that Agent Reuter did not develop probable cause to place Mr. Remalia under arrest until the conducted a custodial interview of Mr. Remalia; again, several hours after Mr. Remalia was first placed under arrest on scene and transported to the NMSP Los Lunas Office for a custodial interview.").

The undisputed facts establish that during his interview at the New Mexico State Police Office in Los Lunas, Mr. Remalia admitted that he handled Ms. Alexander's firearm, Def.'s Facts

---

[4] Agent Reuter's Report appears to establish that he did not become involved in the investigation until Sergeant Ruben Franco of the New Mexico State Police assigned him to investigate the incident as an officer-involved shooting. Suppl. Report of Agent Larry Reuter at 2, ECF No. 24-3. After being assigned the investigation, Agent Reuter travelled to the New Mexico State Police Office in Los Lunas for a briefing and subsequently began his investigation, which included interviewing Mr. Remalia. Id. at 2-3. There is no indication from the video of Mr. Remalia's interview that Agent Reuter was at the scene of the shootout.

¶¶ 14, 17-18, that he shot Ms. Alexander's firearm twice, id. ¶ 15, that he handled a gun belonging to a man named "Boxer," id. ¶ 19, that he handled a .22 caliber gun, id. ¶ 20, and that he was a felon, id. ¶ 16.  See also Supp. Report of Agent Larry Reuter at 5, ECF No. 24-3 (hereinafter, "Reuter Report"); Video of Remalia Interview at 00:45:39 – 00:45:43 ("I put [Ms. Alexander's] gun away . . . ."); id. at 00:47:58 – 00:48:03 ("Well I took two shots showing [Ms. Alexander]."); id. at 00:49:20 – 00:49:24 ("I did have a felony when I was 18."); id. at 00:49:45 – 00:49:50 ("I had the gun before the cops even got there . . . ."); id. at 01:09:47 – 01:09:52 ("[T]he only [gun] . . . I touched way earlier in the day was [Ms. Alexander's]."); id. at 01:10:07 – 01:09:55 (stating that he handled a gun belonging to a man named "Boxer"); id. at 1:10:47 – 01:10:57 ("I had a .22 too, but I didn't want to say that because I might be a felon . . . I don't want to go to jail."). Therefore, the Court finds that Agent Reuter had probable cause to arrest Mr. Remalia for being a felon in possession of a firearm or destructive device after his interview.  See N.M. Stat. Ann. § 30-7-16(A) ("It is unlawful for the following persons to receive, transport or possess a firearm or destructive device in this state: (1) a felon[.]").

Because Agent Reuter did not arrest Mr. Remalia until after his interview, see Def.'s Facts ¶ 23; Reuter Report at 5, Agent Reuter did not violate Mr. Remalia's clearly established rights. Consequently, Agent Reuter is entitled to qualified immunity.  See Morris v. Noe, 672 F.3d 1185, 1194 (10th Cir. 2012) ("When a warrantless arrest is the subject of a § 1983 action, the arresting officer is entitled to qualified immunity if a reasonable officer could have believed that probable cause existed to make the arrest.") (quoting Robertson v. Las Animas Cnty. Sheriff's Dep't, 500 F.3d 1185, 1191 (10th Cir. 2007)).

## V.  Conclusion

Therefore, it is HEREBY ORDERED that Defendant Larry Reuter's Motion for Summary Judgment, ECF No. 24, is **GRANTED**.

*[signature: Margaret Strickland]*

**MARGARET STRICKLAND**
UNITED STATES DISTRICT JUDGE